

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-07-273-CR

ANTHONY RAY NEWSOME                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one point, Appellant Anthony Ray Newsome contends that the trial court erred by failing to grant his motion to suppress his oral statement given at a hospital to a police officer.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

In September 2005, Officer Petty, while at Arlington Memorial Hospital on an unrelated matter, noticed Newsome's arrival at the hospital and that he was bleeding profusely. The officer stated the man had a bloody towel held up to his neck while blood was coming down his shirt. A doctor informed Officer Petty that Newsome had been shot. Officer Petty contacted dispatch to find out if any shootings had been reported but none had been at the time. He then spoke with Newsome to find out what had happened. He learned his name and birthday and Newsome informed him that he had been shot by a white man at a Kroger store. After contacting dispatch again, Officer Petty learned that an unidentified male had attempted to rob an elderly man in a Tom Thumb parking lot only to be shot three times by the victim.[2]

Officer Petty also questioned Newsome about where he was when he had been shot but Newsome was unsure. Because of the seriousness of Newsome's injuries, Officer Petty was unable to question him any further. Newsome was not placed under arrest at that time nor given his *Miranda*

---

[2] More specifically, the evidence later showed that a retired Arlington resident stopped by a local Tom Thumb grocery store. As he began to walk toward the store, a gun-toting would-be robber accosted him in the parking lot. The would-be victim pulled out his own weapon and shot the robber three times, and the perpetrator, Newsome, escaped the scene, leaving a trail of blood.

warnings. Later, the officer said he had a conversation with another officer who gave him a description of the perpetrator as relayed by the complainant. The officer stated that the description matched the injured person with regard to his clothing and ethnicity. The detective assigned to the Tom Thumb robbery confirmed the link between Newsome and the shooting at Tom Thumb. Newsome was arrested at John Peter Smith hospital and charged with two counts of aggravated robbery along with the use or exhibition of a deadly weapon and a repeat offender notice.

Prior to trial, the State waived the first count of aggravated robbery and the deadly weapon charge. In accordance with Newsome's pretrial motion to suppress, the trial court heard evidence regarding Newsome's hospital statements. At the close of a *Jackson v. Denno*[3] hearing, the trial court specifically concluded that Officer Petty's presence at the hospital was unrelated to the robbery investigation, that the officer did not have Newsome in custody, and that Newsome volunteered that he had been shot. Therefore, the trial court ruled Newsome's oral statements admissible. Newsome pleaded not guilty; however, the jury found him guilty and assessed his punishment at forty-two years' confinement. This appeal followed.

---

[3] 378 U.S. 368, 84 S. Ct. 1774 (1964).

### III. Motion to Suppress

In his single point, Newsome asserts error on the part of the trial court by failing to suppress his oral statement at the hospital. Specifically, he frames his point thusly:

> [Newsome] contends the trial court erred by failing to grant his motion to suppress the oral statement he made to a police officer while under extreme medical duress. [Newsome] further asserts that a review of this unique situation establishes, in and of itself, a custodial interrogation requiring the police officer to Mirandize [Newsome].

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total

4

deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the

5

case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**B. Analysis**

Custody is one of the triggers that necessitate *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). The Texas Code of Criminal Procedure sets forth the parameters for the use of statements at trial. Specifically, article 38.22, entitled "When statements may be used," reads in part "[n]othing in this article precludes the admission of a statement . . . that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation[.]" Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005). In *Dowthitt v. State*, the court of criminal appeals stated

> A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. The "reasonable person" standard presupposes an *innocent* person. . . .
>
> In the past, we have recognized four factors relevant to determining custody:
>
> (1) Probable cause to arrest,
>
> (2) Subjective intent of the police,

6

(3) Focus of the investigation, and

(4) Subjective belief of the defendant.

. . . [F]actors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials; the custody determination is based entirely upon objective circumstances.

The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances. . . .

We have outlined at least four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. Concerning the first through third situations, *Stansbury* indicates that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention.

931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996) (citations omitted); *see also*

*Stansbury v. California*, 511 U.S. 318, 322–24, 114 S. Ct. 1526, 1528–30

(1994).

Custodial interrogation is "questioning initiated by law enforcement

officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct.

at 1612. The United States Supreme Court has delineated a two part inquiry to determine whether a suspect is in custody:

> (1) what were the circumstances surrounding the interrogation, and
>
> (2) under those circumstances would a reasonable person feel he or she was not free to terminate the questioning and leave.

See Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995); Stansbury, 511 U.S. at 322–23, 114 S. Ct. at 1528–29. The first inquiry is a factual determination regarding the circumstances surrounding the interrogation. See Thompson, 516 U.S. at 112, 116 S. Ct. at 465.

A distillation of the foregoing discussion, as applied to Newsome and as asserted in this appeal, is that he was in custody because he reasonably believed that his freedom of movement was restrained by his medical condition. However, it is apparent that for custody to attach to the lack of freedom of movement, the restriction must be created by the police officer, as exemplified by the third example given in Dowthitt, "when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted." 931 S.W.2d at 255 (emphasis supplied). Likewise, we hold that Dowthitt's first example, "when the suspect

is physically deprived of his freedom of action in any significant way," implicitly refers to a deprivation created by the police officer. *Id.*

In *Guerrero v. State*, Trooper Davis testified that he went to the emergency room of McKenna Memorial Hospital in New Braunfels to identify persons who had been injured in an accident. 605 S.W.2d 262, 265 (Tex. Crim. App. [Panel Op.] 1980). There were several persons present in the emergency room when Davis entered. *Id.* He asked whether anyone knew who was driving the car that had been in the accident. Guerrero answered that he was the driver. *Id.* The court reasoned as follows in concluding that Guerrero's statement should not be suppressed:

> Davis asked the question as a part of his required investigation of the facts of the accident. When [Guerrero] made the statement, the investigation had not shifted from the investigatory to the accusatory or custodial stage. Davis did not arrest appellant until later, when he decided that appellant was intoxicated. The statement was not the product of custodial interrogation and was admissible.

*Id.*; *see also Yarborough v. State*, 178 S.W.3d 895, 899–902 (Tex. App.—Texarkana 2005, pet. ref'd) (holding that article 38.22 did not apply because Yarborough's movements were restrained only to the extent that he received medical treatment for his stab wounds and nothing in the record suggested that his statements were made in response to custodial interrogation); *Redmond v. State*, 30 S.W.3d 692, 696–97 (Tex.

9

App.—Beaumont 2000, pet. ref'd) (holding that there was no custodial interrogation when officer asked defendant, who was neither in custody nor under arrest at the time, but who was in an ambulance with two broken legs, strapped into a gurney, what had happened); *Vessels v. State*, 938 S.W.2d 485, 486, 488 (Tex. App.—El Paso 1996, no pet.) (concluding that defendant's statements were not the result of custodial interrogation when he went to a hospital for treatment of a gun shot wound to his hand and there was no showing on the record that he was in police custody, that he was restrained, that a guard was posted, that he was told not to leave, that he was handcuffed, or that he was under arrest at the time he told the police what had occurred). *But see Clemmer v. State*, 645 S.W.2d 918, 919–20 (Tex. App.—Fort Worth 1983, no pet.) (excluding Clemmer's statements made in the emergency room after an officer formally placed him under arrest and advised him of his rights).

Here, the trial court read the following findings into the record:

The officer was there on an unrelated incident.  He was told that there was a shooting victim or shooting person there.  He went to try to ascertain whether this person was a victim, talk with him. Mr. Newsome volunteered that he was shot.  And he was not in custody at that time.  And as such, he was not subject to custodial interrogation.  And the Court's going to make a finding that the statement that he gave was a voluntarily made statement and was admissible as a matter of both law and fact.

Applying the relevant standard of review, we hold that Newsome was not in custody, hence not subject to custodial interrogation, and hence not subject to the parameters of *Miranda* and article 38.22.  *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818.  For the foregoing reasons, Newsome's sole point is overruled.

## IV.  Conclusion

Having overruled Newsome's sole point, we affirm the trial court's judgment.


                                        BOB MCCOY
                                        JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 20, 2008